Marie Cleghorn FONDAHN, Plaintiff-Appellant,

v.

NATIVE VILLAGE OF TYONEK, etc., Defendant-Appellee.

No. 25359.

United States Court of Appeals, Ninth Circuit.

Oct. 28, 1971.

James K. Tallman, Anchorage, Alaska, for plaintiff-appellant.

Robert E. Hammond, Anchorage, Alaska, for defendant-appellee.

Before JERTBERG, WRIGHT and CHOY, Circuit Judges.

CHOY, Circuit Judge:

Marie Cleghorn Fondahn filed an action in the District Court for a declaratory judgment and for imposition of a constructive trust on revenues from certain oil and gas leases on the ground that she is a member of the Tyonek Indian Tribe and entitled to benefit from the lease proceeds. The District Court granted summary judgment against her, and she appeals. We reverse and remand with instructions.

Pursuant to Executive Order No. 2141, dated February 27, 1915, a twenty-five thousand (25,000) acre tract of land at Tyonek, Alaska was withdrawn and reserved for the use of the "U.S. Bureau of Education." [1] A letter dated February 25, 1915, from the Secretary of the Interior to President Woodrow Wilson, and a letter dated March 5, 1915, from the President's secretary to the Secretary of the Interior, both state that the withdrawal and reservation of the land were for the benefit of "Alaskan natives of that region."

Appellee, the Native Village of Tyonek, is a corporation organized under 25 U.S.C. § 477. The local government of the reservation is the Tyonek Tribal Council, which is recognized by the United States as the spokesman for the people of Tyonek in all reservation affairs.

In 1963, pursuant to 25 U.S.C. § 398(a), the Secretary of the Interior, with the Council's consent, granted oil and gas leases covering a portion of the reservation. The proceeds of these leases are federal funds held for the use and benefit of the Tyonek Indians, who are to be consulted regarding the expenditure of funds. Per capita payments are, however, expressly forbidden by 25 U.S.C. § 398b. [2]

25 U.S.C. § 163 [3] authorizes the Secretary of the Interior, in his discretion, to prepare a final roll of the Tyonek tribe, which, when approved by him, constitutes the legal membership of the tribe for the purposes of segregating tribal funds. On March 31, 1965, the Secretary approved the final Tribal Membership Roll of the Village of Tyonek. Appellant's name does not appear on this roll.

In the complaint setting forth her claim for relief, appellant alleged that from time immemorial the Indian people who inhabited the area have been known as the Moquawkie Tribe; [4] that she was a member of the Moquawkie Tribe when the first Organic Act for Alaska was enacted and is still a member of the tribe; that the appellee erroneously says that appellant is not a member of the Tyonek tribe; and that she has the right to pos-

---

1. Administrative jurisdiction over education and other services for the natives of Alaska was later transferred to the Office of Indian Affairs, Department of the Interior.

2. "The proceeds from rentals, royalties or bonuses of oil and gas leases upon lands within Executive Order Indian reservations or withdrawals shall be deposited in the Treasury of the United States to the credit of the tribe of Indians for whose benefit the reservation or withdrawal was created * * * *Provided*, that said Indians, or their tribal council, shall be consulted in regard to the expenditure of such money, but no per capita payment shall be made except by Act of Congress."

3. "The Secretary of the Interior is authorized, wherever in his discretion such action would be for the best interests of the Indians, to cause a final roll to be made of the membership of any Indian tribe; such rolls shall contain the ages and quantum of Indian blood, and when approved by the said Secretary are declared to constitute the legal membership of the respective tribes for the purposes of segregating tribal funds. * * * * *"

4. Appellant's complaint engendered some confusion as to the correct name of the people of the region of the Tyonek Village. According to authorities given in appellant's supplemental brief to the District Court, the Tyonek Village has been known, *inter alia*, as the Moquawkie, Tyonick, and the Beluga tribe.

sess, use, occupy and enjoy the area encompassing the town of Tyonek and to share in the revenues from the leases, as does every other member of the Tyonek tribe.[5]

The appellee raises six defenses in its answer to the complaint: (1) lack of federal jurisdiction; (2) the exclusive right of the tribe to determine its own membership, subject only to the power granted to the Secretary of the Interior; (3) the finality of the Secretary's roll; (4) the sovereign immunity of the Indian tribe; (5) failure to join an indispensable party, the United States, which owns the land and disburses the revenues from the leases; and (6) failure to join an indispensable party, the Secretary of the Interior.

The District Court granted appellee's motion for summary judgment, saying " * * * there is no genuine issue as to any material fact and * * * defendant is entitled to judgment as a matter of law. See Section 163 of Title 25 United States Code; Martinez v. Southern Ute Tribe of Southern Ute Res., 249 F.2d 915 (10th Cir. 1957)."

In granting summary judgment rather than dismissing the complaint for lack of jurisdiction, the District Court made a tacit determination that there was jurisdiction to hear the case. The two authorities the District Court cited conflict with a finding of jurisdiction because the statute makes the membership roll approved by the Secretary conclusive and Martinez held that a dispute involving membership in a tribe does not present a federal question. There, Martinez had been duly enrolled as a member of the Southern Ute Tribe. The tribe was then incorporated, after which she was denied membership and the benefits of tribal membership. The Tenth Circuit held that her complaint raised no claim arising under or requiring interpretation or construction of the Constitution, laws or treaties of the United States, and that therefore the District Court had no jurisdiction over the matter. The court said that " * * * a tribe has the complete authority to determine all questions of its own membership, as a political entity, * * * [except as such authority has been qualified by 25 U.S.C. § 163] where the question involved is the distribution of tribal funds and other property under the supervision and control of the federal government." Martinez, supra, at 920.

We agree with and adopt the reasoning and holding of Martinez. We conclude, therefore, that although the District Court cited the appropriate statutory and judicial authority for its ruling, it should have dismissed the complaint for lack of subject matter jurisdiction, rather than granted summary judgment. Accordingly, the matter is remanded to the District Court with instructions to dismiss the present complaint for lack of jurisdiction. We need not consider the validity of appellee's other defenses.

Reversed and remanded.

5. In her memorandum in opposition to appellee's motion to dismiss and for summary judgment, appellant abandoned her position that she is a member of the Moquawkie or Tyonek Tribe and claimed instead that she is an "Alaskan native of that region" within the ambit of Executive Order No. 2141, and that her action is not intended to require her enrollment as a member of the Tyonek Tribe, but to assert her rights as an "Alaskan native of that region" to the profits from the land reserved by the Executive Order. Since her complaint was never amended to include these allegations and claim, we do not decide whether appellant has a claim for relief under the Executive Order, but limit ourselves to her claim, as framed in her complaint, that she is a member of the Tyonek Tribe.