**Margaret OLLESTEAD et al., Appellants,**

v.

**NATIVE VILLAGE OF TYONEK, a Federal Corporation, Appellee.**

**No. 2503.**

Supreme Court of Alaska.

Feb. 16, 1977.

C. R. Kennelly, Kennelly & Azar, Anchorage, for appellants.

William J. Donohue, Anchorage, for appellee.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR and ERWIN, Justices.

## OPINION

BOOCHEVER, Chief Justice.

This appeal concerns the jurisdiction of the courts of Alaska to decide whether appellants are members of the Native Village of Tyonek (the Village) which was organized pursuant to the Act of June 18, 1934 (48 Stat. 984).[1]

The superior court dismissed the action relying on *Fondahn v. Native Village of Tyonek*, 450 F.2d 520 (9th Cir. 1971), and *Martinez v. Southern Ute Tribe*, 249 F.2d 915 (10th Cir. 1957), which denied federal court jurisdiction of membership disputes. It concluded that authority to decide such disputes lies solely with the tribe itself.

---

1. This Act is commonly known as the Indian Reorganization Act or the Wheeler-Howard Act. It was amended by the Act of May 1, 1936 (49 Stat. 1250) to apply to the Native villages of Alaska.

Although our view of the jurisdictional issue differs from that of the superior court, we affirm the judgment below.

Appellants sought a declaratory judgment holding them entitled to rights in the area encompassing the town of Tyonek and shares in the proceeds from certain oil and gas leases which they allege amount to approximately $15,000,000.00. The historical background of their claim is set forth in *Fondahn, supra,* where the United States Court of Appeals from the Ninth Circuit considered its authority to decide a similar controversy:

> Pursuant to Executive Order No. 2141, dated February 27, 1915, a twenty-five thousand (25,000) acre tract of land at Tyonek, Alaska was withdrawn and reserved for the use of the "U.S. Bureau of Education."[1] A letter dated February
>
> [1] Administrative jurisdiction over the education and other services for the Natives of Alaska was later transferred to the Office of Indian Affairs, Department of the Interior.
>
> 25, 1915, from the Secretary of the Interior to President Woodrow Wilson, and a letter dated March 5, 1915, from the President's secretary to the Secretary of the Interior, both state that the withdrawal and reservation of the land were for the benefit of "Alaskan Natives of that region."

Appellee, the Native Village of Tyonek, is a corporation organized under 25 U.S.C. § 477. The local government of the reservation is the Tyonek Tribal Council, which is recognized by the United States as the spokesman for the people of Tyonek in all reservation affairs.

In 1963, pursuant to 25 U.S.C. § 398(a), the Secretary of the Interior, with the Council's consent, granted oil and gas leases covering a portion of the reservation. The proceeds of these leases are federal funds held for the use and benefit of the Tyonek Indians, who are to be consulted regarding the expenditure of funds. Per capita payments are, however, expressly forbidden by 25 U.S.C. § 398b.

25 U.S.C. § 163 authorizes the Secretary of the Interior, in his discretion, to prepare a final roll of the Tyonek tribe, which, when approved by him, constitutes the legal membership of the tribe for the purposes of segregating tribal funds. On March 31, 1965, the Secretary approved the final Tribal Membership Roll of the Village of Tyonek. Appellant's name does not appear on this roll. (footnotes 2–4 omitted)

▇▇▇▇ The principle that Indian tribes are sovereign, self-governing entities subject only to the plenary power of Congress was established in *Worcester v. Georgia,* 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832). Although modified over the years, this principle still applies in all cases where essential tribal relations or rights of Indians are involved. *See, e. g., Williams v. Lee,* 358 U.S. 217, 220–21, 79 S.Ct. 269, 270–271, 3 L.Ed.2d 251, 254 (1959). Indian affairs are subject to state law but only to the extent that Congress explicitly so provides.[2] Thus, both federal and state court jurisdiction over membership disputes must be founded on some Congressional act.

Until the passage of the so-called Indian Bill of Rights, 25 U.S.C. §§ 1301 *et seq.* (82 Stat. 77) (1968), Congress had not conferred any such jurisdiction on the federal courts. It was on this basis alone that jurisdiction was denied in *Fondahn* and *Martinez.*[3] The Tenth Circuit concluded that in the absence of express legislation by Congress:

**2.** *See Bryan v. Itasca County,* 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976). The Supreme Court in *Bryan* rejected the contention that the grant of jurisdiction over Indians contained in 28 U.S.C. § 1360(a) was to be considered plenary except to the extent it was specifically limited. It held that in the absence of express authorization by Congress, Minnesota was without power to levy personal property taxes on reservation Indians.

**3.** The state cases cited by the Village likewise focus on the lack of statutory confirmation of jurisdiction. *See, e. g., Patterson v. Council of Seneca Nation,* 245 N.Y. 433, 157 N.E. 734, 739 (1927):

> We hold merely this: that the courts of the state of New York, *under existing laws,* have no jurisdiction to control by mandamus order, running to the government of the Seneca

a tribe has the complete authority to determine all questions of its own membership, as a political entity, . . . [except as such authority has been qualified by 25 U.S.C. § 163] where the question involved is the distribution of tribal funds and other property under the supervision and control of the federal government.

*Martinez, supra* at 920, quoted in *Fondahn, supra* at 522.

When Congress passed the Indian Bill of Rights, the Tenth Circuit then recognized that federal courts might have jurisdiction over membership disputes. *Slattery v. Arapahoe Tribal Council*, 453 F.2d 278, 281 (10th Cir. 1971). In *Johnson v. Lower Elwha Tribal Community*, 484 F.2d 200, 202 (9th Cir. 1973), the Ninth Circuit expressly held that the Indian Bill of Rights conferred jurisdiction on federal courts. *Fondahn* was distinguished the same year in *Laramie v. Nicholson*, 487 F.2d 315, 316 (9th Cir. 1973), *cert. denied, sub nom. Tonasket v. Thompson*, 419 U.S. 871, 95 S.Ct. 132, 42 L.Ed. 111 (1975):

It is true that [*Fondahn*] was decided in 1971, more than three years after the enactment of the Indian Bill of Rights on April 11, 1968. But it is also true that the statute was not brought to our attention, and we did not even purport to decide what its effect upon jurisdiction

Nation, the membership of that nation. (emphasis added)
*See also Morgan v. Colorado River Indian Tribe*, 103 Ariz. 425, 443 P.2d 421, 424 (1968): "It is clear that Congress alone must determine the extent to which immunities afforded tribal status must be withdrawn."

4. The Supreme Court in *Bryan, supra*, indicated that:
   nothing in [the] legislative history [of 28 U.S.C. § 1360] remotely suggests that Congress meant the Act's extension of civil jurisdiction to the States should result in the undermining or destruction of such tribal governments as did exist . . . .
   *Bryan v. Itasca County*, 426 U.S. at 388, 96 S.Ct. at 2111, 48 L.Ed.2d at 721. *See* 28 U.S.C. § 1360(c). In this case, appellants admit that the Native villages of Alaska, including Tyonek, do not have a system of laws or tribal courts. Therefore, state assumption of jurisdiction to hear membership disputes would *not* interfere with any internal tribal or village affairs.

might be. Instead, we followed pre 1968 law, adopting and applying the reasoning of the Tenth Circuit in *Martinez v. Southern Ute Tribe*, 10 Cir., 1957, 249 F.2d 915. The Tenth Circuit has indicated that *Martinez* may no longer be good law.

The exclusivity of federal jurisdiction over Indian matters in Alaska was eliminated by a 1958 amendment to 28 U.S.C. § 1360(a) which gave Alaska jurisdiction over "civil causes of action between Indians or to which Indians are parties" which arise in areas of Indian country within the then Territory. This provision suggests that state courts are vested with authority to decide corporate membership disputes among Indians [4] including those involving claims under the Indian Bill of Rights.[5] Since, however, we have concluded that § 1360(b) would preclude the assertion of jurisdiction pursuant to § 1360(a) even if it were applicable, we decline to resolve the question of the extent of the jurisdictional grant found in § 1360(a). Subsection 1360(b) precludes state courts from adjudicating the ownership or right to possession of property or an interest therein belonging to an Indian tribe or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States.[6] We must therefore determine whether the resolution of appellants' membership claim involves a

5. *See* Comment, *The Indian Bill of Rights and the Constitutional Status of Tribal Governments*, 82 Harv.L.Rev. 1343, 1346 n.10 (1969). Where Congress has eliminated federal exclusivity in jurisdictional matters, the state courts have jurisdiction to hear federal claims. *See Williams v. Lee*, 358 U.S. 217, 221, 79 S.Ct. 269, 271, 3 L.Ed.2d 251, 254 (1959).

6. 28 U.S.C. § 1360 provides:
   (a) Each of the States or Territories listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over other civil causes of action, and those civil laws of such State or Territory that are of general application to private persons or private property shall have the

determination of rights in restricted or trust property.

■ The only pieces of property at issue here are lands set aside by Executive Order 2141 and the proceeds from the oil and mineral leases of that property. Considering first the real property, we find two applicable restrictions. The Act of May 1, 1936 which extended the provisions of the Indian Reorganization or Wheeler-Howard Act to Alaska Native villages, supplied the provisions under which the Native Village of Tyonek was federally incorporated. It provided that "no authority shall be granted to sell, mortgage or lease for a period exceeding ten years any of the land included in the limits of the reservation." [7] Thus, the lands obtained by the Village within the limits of the reservation were subject to a restriction against alienation.

A second restriction is found in Section 5 of the corporate charter of the Village which prohibits the Village from using its powers to:

Sell or mortgage any land set aside as a reserve for the Village; Make leases, permits or contracts covering any lands or waters set aside as a reserve for the Village without the approval of the Secretary of the Interior or his authorized representative.

In 1971, however, as part of the Alaska Native Claims Settlement Act, Congress passed 43 U.S.C. § 1618(a) which revoked the reservations previously established for Native use with the exception of the Annette Island Reserve. The lands were withdrawn from reservation or reserve status for the purpose of selection by the newly created village corporations under the Settlement Act. Those corporations are state, rather than federal entities,[8] and appellants herein do not seek relief with reference to them.

■ Since there thus appears to be no real property in which appellants would be entitled to share if adjudicated members of the federal corporation,[9] the thrust of the

same force and effect within such Indian country as they have elsewhere within the State or Territory:

. . . . .

(b) Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property, including water rights, belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute or with any regulation made pursuant thereto; or shall confer jurisdiction upon the State to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of such property or any interest therein.
(c) Any tribal ordinance or custom heretofore or hereafter adopted by an Indian tribe, band, or community in the exercise of any authority which it may possess shall, if not inconsistent with any applicable civil law of the State, be given full force and effect in the determination of civil causes of action pursuant to this section.

7. 25 U.S.C. § 477 provides:
The Secretary of the Interior may, upon petition by at least one-third of the adult Indians, issue a charter of incorporation to such tribe:

provided, That such charter shall not become operative until ratified at a special election by a majority vote of the adult Indians living on the reservation. Such charter may convey to the incorporated tribe the power to purchase, take by gift, or bequest, or otherwise, own, hold, manage, operate, and dispose of property of every description, real and personal, including the power to purchase restricted Indian lands and to issue in exchange therefor interests in corporate property, and such powers as may be incidental to the conduct of corporate business, not inconsistent with law, *but no authority shall be granted to sell, mortgage, or lease for a period exceeding ten years any of the land included in the limits of the reservation.* Any charter so issued shall not be revoked or surrendered except by Act of Congress. (emphasis added)

8. *See* 43 U.S.C. § 1602.

9. The Village asserts that:
the federal government has consistently refused to recognize that the . . . [real property involved here] is an Indian Reservation. The government has recognized, however, that these lands were withdrawn for the benefit of Tyonek members.
We need not pass on the validity of this contention. Even if the property were not part of a

declaratory judgment action centers on the proceeds from the oil leases previously executed when the land was in reservation status. Title 25 U.S.C. § 398b provides that proceeds from such leases:

> shall be deposited in the Treasury of the United States to the credit of the tribe of Indians for whose benefit the reservation or withdrawal was created or who are using and occupying the land . . . *Provided* . . . no per capita payment shall be made except by Act of Congress.

This property is thus both held in trust and subject to a restriction on alienation. It therefore triggers the jurisdictional limitation contained in § 1360(b).

 Thus, assuming *arguendo* that the superior court had jurisdiction by virtue of § 1360(a) to determine membership in the Village, such determination would not be effective as to rights in property held in trust and subject to restrictions on alienation. An integral part of the relief sought by the plaintiffs, however, is a declaration of right:

> to all incidental benefits [of membership] including fifteen million dollars [($15,-000,000.00)], more or less, arising out of such right to exclusive possession, use occupation, and enjoyment as any other member of the Tyonek Tribe. . . . [10]

A state court adjudication of questions of tribal membership would necessarily encompass issues of ownership or right to possession of property held in trust and subject to

restrictions on alienation. The state has no jurisdiction "to adjudicate . . . the ownership or right to possession of such property or any interest therein." 28 U.S.C.A. § 1360(b).

 We conclude that the superior court lacked jurisdiction to grant the requested relief.[11]

AFFIRMED.

BURKE, Justice, not participating.

---

reservation and is therefore land in which appellants would otherwise be entitled to share as members of the Village, such land would be property held in trust by the United States, and the jurisdictional prohibitions of 28 U.S.C. § 1360(b) would bar an action in state court.

10. Paragraph 1, demand for relief, plaintiffs' amended complaint.

11. In their brief on appeal, plaintiffs raise an additional argument. 25 U.S.C. § 1302(8) prohibits any Indian tribe from denying any person within its jurisdiction the equal protection of its laws or depriving any person of liberty or property without due process of law. Plaintiffs argue that a decision denying them access to state courts prevents them from securing a

hearing in any forum. The decision in *Fondahn v. Native Village of Tyonek, supra,* would indicate an absence of federal jurisdiction. But as discussed previously, the United States Circuit Court of Appeals for the Ninth Circuit has clearly stated that the *Fondahn* case was based on the law prior to the enactment of the so-called Indian Bill of Rights, including 25 U.S.C. § 1302(8), and that the United States District Court has jurisdiction of such cases alleging denial of equal protection or deprivation of due process. *Laramie v. Nicholson,* 487 F.2d 315, 316 (9th Cir. 1973), *cert. denied, sub nom Tonasket v. Thompson,* 419 U.S. 871, 95 S.Ct. 132, 42 L.Ed.2d 111 (1975). Thus, if plaintiffs have an equal protection or due process claim, a federal forum is available to them.