**HYDABURG COOPERATIVE ASSOCIATION,**
Appellant,

v.

**HYDABURG FISHERIES and Hydaburg Fisheries, Inc., Appellees.**

No. S–6603.

Supreme Court of Alaska.

Oct. 17, 1996.

David C. Crosby, Wickwire, Greene, Crosby, Brewer & Seward, Juneau, for Appellant.

No appearance for Appellees.

Before RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

*OPINION*

RABINOWITZ, Justice.

## I. *INTRODUCTION*

In this appeal Hydaburg Cooperative Association (HCA) focuses primarily on the is-

sue of the subject matter jurisdiction of the superior court to order execution on certain HCA property. HCA has not challenged the judgment below but argues that certain of its property is not subject to execution by the superior court because it is owned by an entity organized under section 16 of the Indian Reorganization Act.[1] HCA did not appear in the execution proceedings below and is therefore raising this issue for the first time on appeal.[2] HCA asserts that the superior court had no jurisdiction to order execution upon and subsequently approve the sale of HCA property which was not committed to the commercial venture out of which the judgment in this case arose. Appellees did not file a brief.

## II. *FACTS AND PROCEEDINGS*

The facts of this case are reported in *Hydaburg I* and *Hydaburg II,* and only those facts relevant to the issue on appeal will be summarized. HCA is either one or two corporate entities created under sections 16 and 17 of the Indian Reorganization Act (IRA). In *Atkinson v. Haldane,* 569 P.2d 151 (Alaska 1977), we held that entities created under section 16 of the IRA were legal entities which were distinct from entities created under section 17 of the IRA. We referred to section 16 entities as governmental units whereas section 17 entities were said to have business purposes. *Id.* at 171. In *Hydaburg I* we recognized that the IRA permitted Native groups to form two entities, 826 P.2d at 756, but generally treated HCA as a single entity having both section 16 and section 17 functions. This was not a critical point given our resolution of the issues presented in that case. *Id.* at 758 n. 12. On remand from the present case, a determination of the status of HCA will be necessary. For convenience and consistency with *Hydaburg I,* we contin-

ue to treat HCA as one entity while recognizing that in fact there may be two entities bearing the same or similar names.[3]

HCA became involved in a commercial venture relating to a fish processing plant and dedicated to this venture the building used for fish processing and HCA's interest in the land on which the building stood. This land was approximately one-third of Lot 1, Block 14, located in Hydaburg. HCA had initially owned all of Lot 1. HCA then deeded this part of Lot 1 to the City of Hydaburg and subsequently leased it back. The remaining two-thirds of Lot 1 were apparently never a part of the commercial project. Eventually the venture collapsed and litigation ensued, resulting in a superior court judgment against HCA. On July 20, 1990, the superior court entered an Order Directing Application of Property to Judgment. The order directed application of the following property to judgment:

> Hydaburg Cooperative Association has a legal interest in real property located under the fish processing building in Hydaburg, Alaska. HCA also has a legal interest in the fish processing building itself, and in the cold storage facility and equipment located within the building. HCA also has a legal interest in a warehouse building adjacent to the fish processing building.

The superior court's order did not explicitly mention the two-thirds of Lot 1 which had never been dedicated to the commercial venture—that is, the part of Lot 1 which was not "located under the fish processing building".

HCA's appeal of this order was rejected in *Hydaburg I.* In our opinion we stated:

> While HCA cannot at this point challenge the judgment against it, the association can protect certain of its assets from execution

---

1. 25 U.S.C. § 476.

2. After this court's decision in *Hydaburg Cooperative Association v. Hydaburg Fisheries,* 826 P.2d 751 (Alaska 1992) (*"Hydaburg I"*), HCA, having run out of money for litigation, ceased participating actively in the litigation. Thus HCA did not join in the appeal which led to *Hydaburg v. Hydaburg Cooperative Association,* 858 P.2d 1131 (Alaska 1993) (*"Hydaburg II"*).

3. We note in addition that there are references in the record to another entity referred to as the "Hydaburg Indian Reorganization Act Council." The name of this organization implies that it may be the entity which fulfills section 16 functions for the Natives of Hydaburg. We observe also that the charter and constitution of HCA are occupationally based ("whereas, a group of Indians having a common bond of occupation in the fish industry in Hydaburg ....") suggesting a section 17 rather than a section 16 function.

under section 16 of the IRA. Section 16 provides in part:

> In addition to all powers vested in any Indian tribe or tribal council by existing law, the constitution adopted by said tribe shall also vest in such tribe or its tribal council the following rights and powers: ... to prevent the sale, disposition, lease, or encumbrance of tribal lands, interest in lands, or other tribal assets without consent of the tribe.

*Hydaburg I*, 826 P.2d at 756 (*quoting* 25 U.S.C. § 476 (1988) (footnote omitted)).[4]

We went on to point out that "[t]he order [applying property to judgment] applies only to those HCA assets involved in the joint venture with Hydaburg Fisheries. Operation of a fish processing facility was a section 17[5] corporate function under paragraph 1 of the charter." *Id.* at 757 (footnote omitted).

After *Hydaburg I*, the superior court rejected attempts by the City of Hydaburg and the United States Department of Commerce Economic Development Administration (EDA) to block execution. Following the execution sale, the superior court entered an order confirming the sale of HCA's property in satisfaction of the judgment. However, included in the execution sale was the two-thirds of Lot 1 which apparently had never been dedicated to the commercial venture,[6] and had not been identified in the superior court's July 20, 1990 Order Applying Property to Judgment. *Hydaburg II*, an appeal by the City and EDA, in which HCA did not participate, followed. The execution on and confirmation of sale of HCA's portion of Lot 1 were not at issue. On remand from *Hydaburg II*, the superior court adopted the position that *Hydaburg II* left execution on this portion of Lot 1 undisturbed. HCA now appeals the order confirming the sale of the disputed two-thirds portion of Lot 1 to Hydaburg Fisheries.

## III. STANDARD OF REVIEW

This appeal raises questions of law regarding the superior court's subject matter jurisdiction. "[W]hether the superior court had subject matter jurisdiction ... is a question of law, subject to de novo review by this court." *Andrews v. Alaska Operating Engineers–Employers Training Trust Fund*, 871 P.2d 1142, 1144 (Alaska 1994). Though HCA did not raise the issue of subject matter jurisdiction before the superior court, "subject matter jurisdiction may be raised at any stage of the litigation and if noticed must be raised by the court if not raised by one of the parties." *Burrell v. Burrell*, 696 P.2d 157, 162 (Alaska 1984) (citations omitted).

## IV. DISCUSSION

### A. HCA's Untimeliness

HCA did not raise its objection to the sale of its two-thirds interest in Lot 1 immediately, as would be expected. It was not until the case was remanded to the superior court on other issues, and the superior court reaffirmed its own order regarding this sale, that HCA filed this appeal. It is not entirely clear, however, what the proper time for HCA to object would have been. HCA probably should have objected to the sale of its interest in two-thirds of Lot 1 at the time the

---

**4.** In *Hydaburg I*, we observed:

> The burden of proving a section 16 exemption from execution was upon HCA.
>
> A debtor claiming an exemption generally must prove that his claim comes within the exemption provisions. Where an issue is left in doubt by the proof so that a court would be required to speculate, the party on which the burden of proof ultimately rests must lose.
>
> 31 Am.Jur.2d *Exemption* § 367 (1989); *accord Hancock v. Stockmens Bank & Trust Co.*, 739 P.2d 760, 761–63 (Wyo.1987) (holding that exemptions are affirmative defenses which debtor must assert and prove). This is consistent with the general rule that a Native entity asserting sovereign immunity bears the burden

of proving it is a tribe. *See The Board of Equalization for the Borough of Ketchikan v. Alaska Native Brotherhood and Sisterhood, No. 14*, 666 P.2d 1015, 1023 (Alaska 1983) (Rabinowitz, J., concurring). It is also consistent with the general policy of placing the burden on the party that controls the proof. *See Sloan v. Jefferson*, 758 P.2d 81, 83 (Alaska 1988). *Hydaburg I*, 826 P.2d at 757 (footnote omitted).

**5.** 25 U.S.C. § 477.

**6.** HCA contends that this two-thirds of Lot 1 was an asset of HCA's section 16 non-commercial or tribal function, rather than its section 17 commercial or business function.

superior court was issuing its confirmation of the sale. However, we hold that HCA is not bound by its failure to object at that time for the following reasons.

### 1. *Civil Rule 69(g) Does Not Apply*

Civil Rule 69(g), governing the confirmation of sale of real property on execution, as well as objections to such confirmation, applies only to property sold pursuant to a writ of execution.[7] Apparently two-thirds of Lot 1 was never the subject of a writ of execution in the case at bar. HCA's objections are not to an irregularity in the method of sale, as contemplated by Rule 69(g)(2), but rather are to the very right of the creditors to sell HCA's property. By its terms Rule 69(g) does not apply to this situation, and thus HCA is not bound by its procedures.

### 2. *HCA Should Not Be Bound by the Time for Appeal of the Superior Court's Initial Order Confirming the Sale*

■ Ordinarily, a party which does not raise issues on the initial appeal following the superior court's judgment waives those issues. However, in this case, HCA had excellent reasons for not raising the issue of lack of subject matter jurisdiction immediately. HCA had stopped appearing at the proceedings because *Hydaburg I* had apparently resolved all of the important issues relating to it. HCA lost its appeal in *Hydaburg I* but had received an unequivocal statement from this court that (a) it could protect "section 16 assets," *id.* at 757, and (b) the superior

court's order applying property to judgment was applied "only to those HCA assets involved in the joint venture with Hydaburg Fisheries." *Id.* HCA should have been able to reasonably rely on these assurances in discontinuing its participation in the proceedings. The extent of its liability was established and this court had delineated the limits of the superior court's order of execution. At this point, HCA had no reason to suspect that other parts of its property would be sold without the issuance of a writ of execution covering this other property. It is entirely possible that HCA never even knew about the sale of this property by the time of *Hydaburg II*.

As mentioned above, the issue of subject matter jurisdiction is not waivable and can even be raised at a very late stage in the litigation.[8] *See O'Link v. O'Link,* 632 P.2d 225, 226 n. 2 (Alaska 1981).

### B. *Whether the Superior Court had Subject Matter Jurisdiction to Allow Execution on the Two–Thirds of Lot 1*

■ HCA was organized under sections 16 and 17 of the Indian Reorganization Act (25 U.S.C. §§ 476 and 477 (1988) (1990 and 1994 amendments to these sections are not relevant to this case)). In *Hydaburg I*, we held that HCA could protect those of its assets which were dedicated to its section 16 function: "[HCA] can protect certain of its assets from execution under section 16 of the IRA." *Hydaburg I,* 826 P.2d at 756 (footnote omitted). "The [superior court's] order applies only to those HCA assets involved in the

---

7. Civil Rule 69(g) provides:

  (1) *Confirmation.* Where real property has been sold on execution the plaintiff in the writ of execution, on motion, is entitled to have an order confirming the sale, after the expiration of 10 days after the filing of the return of sale, unless the judgment debtor has filed objections to the sale within 10 days after the filing of the return of sale.

  (2) *Objections.* If objections are filed the court shall determine at a hearing whether there were substantial irregularities in the proceedings of sale which caused probable loss or injury to the judgment debtor. If not, the order confirming the sale shall be granted. If so, the court shall deny the motion and direct that the property be resold, in whole or in part as upon an execution received of that date.

8. It should be noted that this issue was not raised quite as late as it might initially seem. The jurisdictional defect is only as to execution on certain of HCA's property which was not listed in the order mentioned in *Hydaburg I*. There is no objection to the jurisdiction to hear the merits of the underlying case. Therefore, the absolute earliest opportunity that HCA could possibly have raised the issue was when the jurisdictional defect was created—at the execution sale. In fact, since there is no indication of when HCA received notice that this property had been sold, HCA's first chance to raise the jurisdictional challenge could have been even later than the sale date.

joint venture with Hydaburg Fisheries. Operation of a fish processing facility was a section 17 corporate function under paragraph 1 of the charter." *Id.* at 757. Thus we declared that the portion of HCA's land which was not owned under or dedicated to the section 17 corporate function was protected from execution.

Given that the exemption of this property is created by federal law, the defect in execution upon the property by a state court is indeed jurisdictional.[9] Jurisdiction in this case is governed by 28 U.S.C. § 1360(b). "Subsection 1360(b) precludes state courts from adjudicating the ownership or right to possession of property or an interest therein belonging to an Indian tribe or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States." *Ollestead v. Native Village of Tyonek,* 560 P.2d 31, 34 (Alaska 1977). This statement is not limited to reservation lands, but includes all property subject to a federally imposed restraint. *See id.* at 35–36 n. 9. In *Heffle v. State,* 633 P.2d 264 (Alaska 1981), we noted the lack of state court jurisdiction to adjudicate "ownership and other interests in property which is subject to a restriction against alienation imposed by the United States," *Id.* at 267 (citing 28 U.S.C. § 1360(b)). The property at issue in *Heffle* was Native allotments.[10] In a case involving intestate succession of Native

Regional corporation shares, we noted that if resolution of the matter involved more than an interpretation of state law on adoption and intestacy, state courts would lack jurisdiction to adjudicate the ownership of the stock. *Calista Corp. v. Mann,* 564 P.2d 53, 58 (Alaska 1977) (citing 43 U.S.C. § 1606(h)(2) as conferring jurisdiction otherwise withheld by 28 U.S.C. § 1360(b)).

Thus, Alaska's state courts lack jurisdiction to authorize executions on properties exempted by 25 U.S.C. § 476 (IRA § 16). More particularly, if HCA proves that the disputed two-thirds of Lot 1, Block 14 is exempt property under 25 U.S.C. § 476, it is entitled to have the execution vacated as against this property and the proceedings dismissed.

## V. CONCLUSION

Given the law of the case established in *Hydaburg I* and *Hydaburg II,* we conclude that the most appropriate disposition of this appeal is to remand the case to the superior court for resolution of the following issues:

(a) Whether HCA consists of two entities, one of which exercises section 16 functions and one of which exercises section 17 functions and, if so, which of the two entities owns the disputed two-thirds of Lot 1, Block 14, and

**9.** In *In re City of Nome,* 780 P.2d 363, 367 (Alaska 1989), we described the protections of IRA section 16 (25 U.S.C. § 476): "The Act was intended to stop the alienation of tribal land needed to support Indians ...." (citation omitted).

More specifically, and analogous to the execution which is at issue in this case, we stated: The language of 25 U.S.C. § 476 appears to protect [tribal] lots from foreclosure by the City. The purpose for which this provision was enacted is clear; application of the provision to foreclosure proceedings will further that purpose. If any doubt remained, this court would rest on the settled principle that, in Indian law, all ambiguities must be resolved in favor of the Indians.

. . . .

.... By barring transfer without [tribal] consent, Congress has determined that state law permitting foreclosure *does not apply.*

*Id.* (citation omitted).

**10.** The mention of restraints on "alienation" should not be construed to limit this denial of

jurisdiction to cases where the natives themselves are restrained from alienating property. The text of section 1360(b) reads:

Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property ... belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute or with any regulation made pursuant thereto....

If the execution on HCA's section 16 property does not fall under the "restriction against alienation" heading, it does fall under the "inconsistent with any ... statute" heading.

Furthermore, the protection of section 16 property could be called a restraint on the alienation of non-commercial property by the commercial section 17 entity.

(b) if it is determined that part of Lot 1, Block 14 is owned by HCA under section 16, whether HCA dedicated this portion of Lot 1 to its joint venture with Hydaburg Fisheries.

On remand the burden of proving a Section 16 exemption from execution is on HCA. In the event the superior court concludes that HCA has met its burden and proved that it is entitled to an exemption under section 16, the superior court should set aside and vacate its order confirming the sale to Hydaburg Fisheries of the two-thirds of Lot 1, Block 14. Moreover, the superior court should vacate the deed to the two-thirds of Lot 1, Block 14 which was issued on June 11, 1993, grant such additional relief as it deems appropriate, and dismiss this execution proceeding.

REMANDED for further proceedings consistent with this opinion.[11]

COMPTON, C.J., not participating.

---

**11.** Our disposition makes it unnecessary to address whether Civil Rule 69(a) was complied with or whether the execution and sale of possibly exempt property without notice or an opportunity to be heard is violative of due process.