MEMORANDUM *
Plaintiffs appeal the district court’s order vacating a judgment entered on the basis of a settlement between Plaintiffs and Defendants, the Secretary of the Interior and officials of the Bureau of Indian Affairs (“BIA”). In their suit, Plaintiffs allege that seventy-two people (“Calac descendants”) who are not eligible for membership in the Rincon Band of San Luiseño Indians (“Band”) are nonetheless enrolled members because of the improper actions and omissions of BIA officials. The district court dismissed the Plaintiffs’ suit after it concluded that the Band was a necessary and indispensable party. We agree with the district court that the Band is an indispensable party and that it was proper to dismiss the suit on this ground. Nevertheless, we do not reach that issue because we conclude that the Plaintiffs suit suffers from a more fundamental defect that deprives this court of jurisdiction.
Although the issue of Plaintiffs’ standing was not raised in district court, standing is a jurisdictional issue that we may consider for the first time on appeal. See Pritikin v. Dep’t of Energy, 254 F.3d 791, 796 (9th Cir.2001). Standing is a threshold requirement, without which neither the district court nor this court has jurisdiction. See Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (“In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.”); City of S. Lake Tahoe v. Cal. Tahoe Reg’l Planning Agency, 625 F.2d 231, 233 (9th Cir.1980) (“Standing is a necessary element of federal-court jurisdiction.” (citation omitted)).
[T]o satisfy Article Ill’s standing requirements, a plaintiff must show (1) it has suffered an “injury in fact” that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The party invoking federal jurisdiction bears the burden of establishing standing. See Lujan, 504 U.S. at 561. While Plaintiffs allege three different injuries, only one — vote dilution — is a direct injury even marginally traceable to the conduct of Defendants.[1] *393 See Baker v. Carr, 369 U.S. 186, 208, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); see also Michel v. Anderson, 14 F.3d 623, 626 (D.C.Cir.1994).
Even assuming that Plaintiffs’ alleged injuries are sufficiently linked to the complained of actions by Defendants, Plaintiffs must still establish that a decision in their favor would likely redress their injuries. See Lujan, 504 U.S. at 561. It is on this ground that Plaintiffs’ claim fails. In their Complaint, Plaintiffs seek (1) declarations that (a) the Assistant Secretary of the Interior for Indian Affairs violated the law by ordering BIA officials to cease further administrative proceedings related to considering the membership of the Calac decedents, and (b) Defendants had breached their trust obligations and fiduciary duties, as well as their obligations under federal and tribal law regarding membership; and (2) an order enjoining Defendants from refusing to perform their duties as required by federal regulations and tribal law. To establish redressability here, Plaintiffs must demonstrate that if the BIA were to carry out its duties under tribal law, it is likely that no ineligible members would be permitted to vote in tribal elections. See Lujan, 504 U.S. at 561 (noting that plaintiff invoking federal jurisdiction bears burden of establishing standing).
The problem with Plaintiffs’ claim is that any relief fashioned by the district court— either enforcement of the Settlement Agreement or an order directing the BIA to reconsider the enrollment of the disputed individuals — directly implicates the Band’s sovereign right to determine its own membership and enrollment procedures. See Apodaca v. Silvas, 19 F.3d 1015, 1016 (5th Cir.1994) (concluding that tribes “have the right to control their membership roster, and any federal litigation on that subject would disrupt the conduct of intratribal affairs, an area that the federal government has left to the tribe itself’). However, the district court has no authority to determine the Band’s membership criteria or enrollment procedures.[2] *394 See Santa Clara Pueblo v. Martinez, 436 U.S. 49, 72 n. 32, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (“A tribe’s right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community.”). Rather, “courts have consistently recognized that in absence of express legislation by Congress to the contrary, a tribe has the complete authority to determine all questions of its own membership, as a political entity.” Martinez v. S. Ute Tribe, 249 F.2d 915, 920 (10th Cir.1957) (emphasis added); see also Fondahn v. Native Village of Tyonek, 450 F.2d 520, 522 (9th Cir.1971) (agreeing with Tenth Circuit’s conclusion in Martinez “that a dispute involving membership in a tribe does not present a federal question”).
These cases all say that the district court has no authority to order any relief favorable to Plaintiffs’ complaint because, any such relief would impermissibly impair the Band’s sovereign right to determine its membership. Accordingly, it is not sufficiently likely that the district court could redress Plaintiffs’ alleged injuries and thus, that Plaintiffs do not have standing to sue. See Friends of the Earth, 528 U.S. at 180-81 (noting that plaintiff must demonstrate that “it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision”).
Accordingly, the district court decision is AFFIRMED.

 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

. To establish an "injury in fact” sufficient for standing, “[ajbstract injury is not enough.” City of Los Angeles v. Lyons, 461 U.S. 95, 101— 02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Rather, Plaintiffs "must show that [they] ‘ha[ve] sustained or [are] immediately in danger of sustaining some direct injury’ as the result of the challenged official conduct and *393 the injury or threat of injury must be both 'real and immediate/ not 'conjectural' or 'hypothetical.' ” See id. The other injuries asserted by Plaintiffs all fail because none are "fairly traceable to the challenged action of the defendantfs].” See Friends of the Earth, 528 U.S. at 180-81. For instance, any connection between Edward Arviso’s 2000 election defeat and the January 3 letter is tenuous, as Arviso lost that election by 128 votes— i.e., by forty-six more than the number of votes that could have been cast by the seventy-two disputed members. Similarly, Plaintiffs have failed to demonstrate a causal connection between the Grover Letter and Bruce Kolb's application to enroll his children. Based on the plain reading of the Grover Letter, the directive to take no action relates only to the applications of the descendants of Jose Maria Calac. Yet, Plaintiffs do not contend that Kolb’s children are Calac’s descendants or explain how the Grover Letter’s directive would otherwise prevent the BIA from taking any action on Kolb’s application. More important, Plaintiffs do not explain how the Grover Letter, which was sent four years after Kolb filed his application, prevented the BIA from taking any action with respect to Kolb's application. Finally, Plaintiffs can show no connection between the denial of Sharon M. Bartcher’s housing application and the inaction of the BIA. Plaintiffs have not alleged or demonstrated that the Band’s housing leases are so limited that granting a lease to the Calac descendants precluded one for Bartcher or that these lineal descendants were given leases instead of Bartcher. Further, Bartcher’s lease application was denied two years before the membership of the lineal descendants was protested on July 26, 1989, and nearly fourteen years before the Grover Letter.

. We recognize that the crux of Plaintiffs’ Complaint is that the BIA failed to take action with respect to the Calac descendants’ membership, which they assert was required by tribal law and by 25 C.F.R. § § 2 and 62. Nevertheless, the regulations are not applicable in this context, and any other role the *394 Defendants play in the Band's membership process is that authorized and defined by tribal law. Thus, any decision of the district court would impermissibly alter the Band's grant of authority to the BIA over membership disputes.