*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| NATIVE VILLAGE OF CHIGNIK LAGOON, | ) ) Supreme Court No. S-18090 |
| Appellant, | ) ) Superior Court No. 3PA-18-00134 CN |
| v. | ) O P I N I O N |
| STATE OF ALASKA, DEPARTMENT OF HEALTH & SOCIAL SERVICES, OFFICE OF CHILDREN'S SERVICES and NATIVE VILLAGE OF WALES, | ) No. 7628 – October 14, 2022 ) ) ) ) |
| Appellees. | ) ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Jonathan A. Woodman, Judge.

Appearances: Michael J. Walleri, Jason Weiner and Associates, PC, Fairbanks, for Appellant. Anna R. Jay and Jessica M. Alloway, Assistant Attorneys General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee State of Alaska. Ali G. Wykis, Kawerak, Inc., Anchorage, for Appellee Native Village of Wales.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

MAASSEN, Justice.

## I. INTRODUCTION

Two tribes claim to be a child's tribe for purposes of the Indian Child Welfare Act (ICWA). The Native Village of Wales claims that the child is a tribal

member, and the Native Village of Chignik Lagoon claims that the child is "eligible for tribal membership." After the superior court terminated the biological parents' parental rights, Wales moved to transfer subsequent proceedings, including potential adoption, to its tribal court. Chignik Lagoon intervened in the child in need of aid (CINA) case, arguing that the child is not a member of Wales under Wales's constitution and that transfer of further proceedings to the Wales tribal court was not authorized under ICWA.

The superior court found that the child is a member of Wales and that Wales is the child's tribe for ICWA purposes, and the court therefore granted the transfer of jurisdiction. Chignik Lagoon appeals. We affirm the superior court's determination that the child is a member of Wales and that Wales was appropriately designated as the child's tribe for ICWA purposes. We also conclude that, given that ruling, Chignik Lagoon lacks standing to challenge the transfer of proceedings to the Wales tribal court.

## II.    FACTS AND PROCEEDINGS

Trent O.[1] was born in July 2018. Wales considers Trent's mother and maternal grandmother to be tribal members, though neither lives in the village of Wales.

Trent tested positive for opiates at birth. On August 6 the Office of Children's Services (OCS) filed a non-emergency petition for adjudication of Trent as a child in need of aid and for temporary custody. Presuming that Trent was eligible for Wales tribal membership, the superior court proceeded under ICWA. A Wales tribal representative attended the continued probable cause hearing three days later, and the notice of rights required by ICWA was sent to Wales.[2]

---

[1]    We use pseudonyms to protect the privacy of Trent's family and the foster parents.

[2]    *See* 25 U.S.C. § 1912(a) ("In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party (continued...)

Trent was released from the hospital's neonatal treatment unit about a month after his birth, and OCS placed him in a foster home with David and Darla Dunn, who had already adopted Trent's cousin. David's mother is Alaska Native and a Chignik Lagoon tribal member, and other extended family of the Dunns live in the village of Chignik Lagoon. Trent interacted with David's family regularly. Darla testified that Wales, on the other hand, "never reached out to [her]" while Trent was living with her and David.

Wales did, however, continue to participate in the court proceedings, sending a representative to 13 of the 22 hearings. Following a termination trial in August and September 2020, the court terminated the parental rights of Trent's parents; they are not involved in this appeal.

In December 2020 Wales petitioned to transfer post-termination CINA proceedings to its tribal court, submitting an acceptance of jurisdiction signed by five tribal court judges and a tribal representative. The guardian ad litem and OCS opposed the petition, arguing that ICWA's jurisdictional transfer provision[3] did not require transfer of post-termination proceedings. It was their position that Trent should remain with the Dunns, who hoped to adopt him.

The superior court agreed that ICWA's jurisdictional transfer provision did not apply to post-termination proceedings, but it determined that it nevertheless had authority to transfer jurisdiction to the Wales tribal court. The court quoted our opinion

---

[2]    (...continued)
seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify . . . the Indian child's tribe . . . .").

[3]    *Id.* § 1911(b).

in *Starr v. George*[4]: "ICWA applies only to specified child custody proceedings, which are limited to foster care placement, termination of parental rights, preadoptive placement, and adoptive placement."[5] The court concluded that under the plain language of ICWA, when a tribe seeks a transfer of jurisdiction to tribal court, a state court should grant it absent good cause. The court granted the transfer to the Wales tribal court in late December 2020.

Before the transfer took effect, David, Trent's foster father, enrolled as a member of Chignik Lagoon. In early January 2021 Chignik Lagoon filed a motion to stay the transfer, a motion to intervene, and a petition to invalidate the transfer order. Chignik Lagoon argued that granting tribal intervention and transfer to Wales was error and that Chignik Lagoon, not Wales, was Trent's tribe for ICWA purposes. The superior court granted the stay without ruling on the other motions.

Wales enrolled Trent as a member on February 13, and on February 24 Wales, having participated in the proceedings for the past few years, moved to formally intervene.

On April 12 the superior court held an evidentiary hearing to determine which tribe was Trent's tribe under ICWA. The Dunns testified about their relationship with Trent as foster parents and Trent's interactions with members of Chignik Lagoon. The court heard from Chignik Lagoon's ICWA caseworker, who also served on Chignik Lagoon's tribal court. She testified about the requirements for tribal membership under Chignik Lagoon's constitution, explaining that although Trent was eligible for membership from the moment the Dunns "picked him up from the hospital . . . due to [the Dunns'] familial ties from birth," he was not yet an enrolled member.

---

[4]     175 P.3d 50 (Alaska 2008).

[5]     *Id.* at 55 n.25.

An OCS caseworker testified about early and unsuccessful attempts to place Trent with family members. She explained that prior to Wales's transfer request, OCS's permanency plan was for Trent to be adopted by the Dunns, and that until the parents' rights were terminated Wales had never expressed an interest in removing Trent from the Dunns' care. The caseworker confirmed that "the Wales Tribe, all along throughout the life of, up to and through termination, were accepting of the Dunns' placement and permanency goal [of] adoption."

Wales called Anna Oxereok, the president of the Native Village of Wales, to testify. Oxereok testified that both Trent and his biological mother are members of Wales and that Trent "was born Inupiat and . . . Kingikmiut."[6] She testified that in Wales, "when a child becomes orphaned, they're given to the next kin, to the brother, the sister, the aunt, the uncle. And that's the way of protecting our children, protecting our way is to make sure we keep the children in . . . our tribe."

Though Oxereok testified she believed Trent "should go to family first," she confirmed that the "tribal court ha[d] yet to make any decisions about placement because the case had[n't] transferred yet." She testified that "if [Wales did] get jurisdiction, . . . [its tribal council] would have a meeting. . . . They'd look his whole case over again." Oxereok also testified about the tribe's interpretation of its constitutional provision governing tribal membership.

Following the hearing, the court determined that Wales was Trent's tribe and ordered jurisdiction transferred to the Wales tribal court. Applying 25 C.F.R. § 23.109, the court found that Wales had "more significant contacts" with

---

[6] The Inupiaq name of the community is Kingigin, and people from Kingigin are called Kingikmiut.

Trent.[7]  The court concluded that there was no good cause not to transfer jurisdiction to Wales, and it therefore vacated the stay and ordered the proceedings transferred.  The court also granted Chignik Lagoon's motion to intervene, vacated all future hearings, and denied as moot all other outstanding motions — including Wales's motion for intervention and Chignik Lagoon's petition to invalidate the transfer.

Chignik Lagoon appeals.  The superior court stayed the transfer order pending disposition of the appeal.

## III.  STANDARD OF REVIEW

"We evaluate de novo the scope of tribal jurisdiction and the meaning of federal statutes."[8]  When interpreting a statute we "apply our independent judgment, interpreting the statute according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[9]  "We may affirm the superior court on any basis supported by the record, even if that basis was not considered by the court below or advanced by any party."[10]

## IV.  DISCUSSION

We first address whether the superior court erred in determining that Trent is a member of Wales.  We then address whether the superior court erred in determining

---

[7]  If a child meets the definition of "Indian child" through more than one tribe, and the tribes do not agree which tribe should be designated as the child's tribe for ICWA purposes, the court must choose the tribe with the "more significant contacts" with the child.  25 C.F.R. § 23.109(c) (2016).  25 C.F.R. § 23.109(c)(2) lists factors the court must consider when determining which tribe has "more significant contacts."

[8]  *State v. Native Vill. of Tanana*, 249 P.3d 734, 737 (Alaska 2011).

[9]  *Johnson v. State, Dep't of Corr.*, 380 P.3d 653, 655 (Alaska 2016).

[10]  *Leahy v. Conant*, 436 P.3d 1039, 1043 (Alaska 2019) (quoting *Brandner v. Pease*, 361 P.3d 915, 920 (Alaska 2015)).

that Wales is Trent's tribe for ICWA purposes. Last, we address Chignik Lagoon's standing to challenge the transfer of post-termination proceedings to the Wales tribal court.

**A. The Superior Court Did Not Err By Deferring To The Tribes' Membership And Eligibility Determinations.**

A federal regulation, 25 C.F.R. § 23.108, defines who decides tribal membership under ICWA:

> (a) The Indian Tribe of which it is believed the child is a member (or eligible for membership and of which the biological parent is a member) determines whether the child is a member of the Tribe, or whether the child is eligible for membership in the Tribe and a biological parent of the child is a member of the Tribe, except as otherwise provided by Federal or Tribal law.

> (b) The determination by a Tribe of whether a child is a member, whether a child is eligible for membership, or whether a biological parent is a member, is solely within the jurisdiction and authority of the Tribe, except as otherwise provided by Federal or Tribal law. The State court may not substitute its own determination regarding a child's membership in a Tribe, a child's eligibility for membership in a Tribe, or a parent's membership in a Tribe.

The superior court concluded that Trent is both a member of Wales and eligible for membership in Chignik Lagoon, explaining that "if the Native Village of Wales finds that, under its laws, [Trent] is eligible for membership, it is not this court's place to question that determination." Likewise, the court explained that it "will not, and cannot, question" Chignik Lagoon's determination that Trent is eligible for membership.

Chignik Lagoon argues that the superior court erred in its interpretation of 25 C.F.R. § 23.108; it contends that the regulation requires a state court to invalidate a tribe's membership determination if, in the court's view, that determination is

inconsistent with tribal or federal law. Chignik Lagoon contends that Trent is not eligible for membership in Wales under either tribal or federal law, and thus the court erred in concluding that he is a member of Wales.

Chignik Lagoon's interpretation is inconsistent with the regulation's language and purpose. The regulation provides that "[t]he Indian Tribe . . . determines whether the child is a member of the Tribe . . . except as otherwise provided by Federal or Tribal law" and a "State court may not substitute its own determination regarding a child's membership in a Tribe."[11] We read these words as having a plain meaning: A tribe has the last word in determining its tribal membership unless federal or tribal law provides that *another entity* — such as the state court or the Bureau of Indian Affairs (BIA) — should make that determination instead.

This interpretation is supported by the regulation's focus. Titled "Who makes the determination as to whether a child is a member, whether a child is eligible for membership, or whether a biological parent is a member of a Tribe?,"[12] the regulation explains which entity makes the determination, not how the determination is made or what standards should apply.

The Federal Register offers additional insight. The BIA explains in comments to its ICWA regulations that "Tribes, as sovereign governments, have the exclusive authority to determine their political membership and their eligibility requirements."[13] Therefore, "[a] Tribe is . . . . the authoritative and best source of information regarding who is a citizen of that Tribe and who is eligible for citizenship

---

[11]    25 C.F.R. § 23.108(a)-(b).

[12]    25 C.F.R. § 23.108.

[13]    81 Fed. Reg. 38,807 (June 14, 2016).

-8-                                                                            7628

of that Tribe."[14] "Thus, the rule defers to Tribes in making such determinations and makes clear that a court may not substitute its own determination for that of a Tribe regarding a child's citizenship or eligibility for citizenship in a Tribe."[15]

Court decisions reflect the same rule of deference to the tribe's exercise of control over its own membership. The U.S. Supreme Court has long recognized tribes' "inherent power to determine tribal membership."[16] In *John v. Baker* we recognized that "the Supreme Court has articulated a core set of [tribes'] sovereign powers that remain intact [unless federal law provides otherwise]; in particular, internal functions involving tribal membership and domestic affairs lie within a tribe's retained inherent sovereign powers."[17] We have also "long recognized that sovereign powers exist unless divested," and " 'the principle that Indian tribes are sovereign, self-governing entities' governs 'all cases where essential tribal relations or rights of Indians are involved.' "[18]

Chignik Lagoon's argument would require state courts to independently interpret tribal constitutions and other sources of law and substitute their own judgment on questions of tribal membership. This argument is directly contrary to the directive of 25 C.F.R. § 23.108. The superior court did not err in concluding that a tribe's

---

[14]     *Id.*

[15]     *Id.*

[16]     *See Montana v. United States*, 450 U.S. 544, 564 (1981); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55 (1978); *Roff v. Burney*, 168 U.S. 218, 222 (1897).

[17]     982 P.2d 738, 751 (Alaska 1999) (citing *United States v. Wheeler*, 435 U.S. 313, 326 (1978); *Montana*, 450 U.S. at 564).

[18]     *Id.* (quoting *Ollestead v. Native Vill. of Tyonek*, 560 P.2d 31, 33 (Alaska 1977)).

membership determinations are final and not reviewable by a state court.[19]

## B. The Superior Court Did Not Err By Concluding That Wales Is Trent's Tribe For ICWA Purposes.

ICWA defines "Indian child" as a person under 18 who is unmarried and (a) a member of an Indian tribe or (b) eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe.[20] A state court may recognize only one tribe as the Indian child's tribe for ICWA purposes; there are two complementary rules the court must use to make this determination. The first is in 25 U.S.C. § 1903(5)[21]:

> "Indian child's tribe" means (a) the Indian tribe in which an Indian child is a member or eligible for membership or (b), in the case of an Indian child who is a member of or eligible for membership in more than one tribe, the Indian tribe with which the Indian child has the more significant contacts.

The second rule comes from BIA regulations. Under 25 C.F.R. § 23.109, the court determines the child's tribal membership in three steps. First, under subsection

---

[19] Other state courts agree. *See People ex rel. K.C. v. K.C.*, 487 P.3d 263, 270 (Colo. 2021) ("[C]itizenship for purposes of ICWA is left exclusively to the control of each individual nation."); *In re T.W.*, No. 122,197, 2020 WL 3885923, at *13 (Kan. App. Jul. 10, 2020) ("The ultimate determination of whether a child is a member of or eligible for membership of a recognized tribe is solely determined by tribal or federal law."); *In re L.D.*, 414 P.3d 768, 773 (Mont. 2018) ("Except as otherwise limited by federal statute or treaty, Indian tribes have the sole power to determine their membership and membership eligibility."); *In re E.J.B.*, 846 S.E.2d 472, 476 (N.C. 2020) ("[D]etermination [of tribal membership] is committed to the sole jurisdiction of the tribe . . . ."); *In re N.C.H.*, 489 P.3d 139, 141 (Or. App. 2021) ("A tribe's word on the matter of membership or eligibility for membership is conclusive on th[at] point."); *In re Z.J.G.*, 471 P.3d 853, 866 (Wash. 2020) ("Tribes are in the exclusive position to determine the membership of their own nations, and ICWA . . . recognize[s] and respect[s] the sovereign power of tribes to decide this highly internal matter.").

[20] 25 U.S.C. § 1903(4).

[21] Alaska CINA Rule 2(h) is identical to this federal provision.

(a), if an Indian child is "a member or eligible for membership in only one Tribe, that Tribe must be designated as the Indian child's Tribe."[22]  Second, under subsection (b), if "an Indian child meets the definition of 'Indian child' through more than one Tribe, deference should be given to the Tribe in which the Indian child is already a member, unless otherwise agreed to by the Tribes."[23]  And third, under subsection (c), if an Indian child is "a member in more than one Tribe or the child is not a member of but is eligible for membership in more than one Tribe," the court must provide the tribes an opportunity to decide which should be designated as the Indian child's tribe.[24]  If the tribes do not agree, the state court then considers relevant factors to determine the Indian child's tribe based on which tribe has more significant contacts:

> (i) Preference of the parents for membership of the child;
>
> (ii) Length of past domicile or residence on or near the reservation of each Tribe;
>
> (iii) Tribal membership of the child's custodial parent or Indian custodian; . . .
>
> (iv) Interest asserted by each Tribe in the child-custody proceeding;
>
> (v) Whether there has been a previous adjudication with respect to the child by a court of one of the Tribes; and
>
> (vi) Self-identification by the child, if the child is of sufficient age and capacity to meaningfully self-identify.[25]

The superior court in this case first found that section 23.109(a) was not

---

[22]    25 C.F.R. § 23.109(a).

[23]    *Id.* § 23.109(b).

[24]    *Id.* § 23.109(c).

[25]    *Id.* § 23.109(c)(2).

applicable because Trent "is eligible for membership in [Chignik Lagoon] and is a member of [Wales]." The court next found that section 23.109(b) was also inapplicable, reasoning that although "the regulations state deference *should* be given to the Tribe in which the Indian child is already a member," "should" is not a mandatory phrase and thus not determinative. Because the tribes were unable to come to an agreement, the superior court considered the factors listed above in section 23.109(c)(2) and found that "the only factor that applies here is the 'interest asserted by each Tribe in the child-custody proceeding.' "[26]

The court observed that both Chignik Lagoon and Wales had "testified that they are concerned for [Trent's] best interests, and that involvement with tribal activities is important for both Tribes." But the court found that Wales had "clearly asserted more interest in this child-custody proceeding." The court focused on Wales's substantial involvement in the CINA case from the outset, noting that "Wales has been treated as [Trent's] Tribe for the majority of these proceedings." Although Chignik Lagoon moved to intervene in January 2021, the court explained that Wales "ha[d] been involved in this case from the beginning," that is, since August 2018, participating in 13 "of the 22 hearings held over the course of this case." Ultimately, because "the only applicable factor weigh[ed] in favor of the Native Village of Wales, and because deference should be given to the Tribe in which the Indian child is a member," the court designated Wales as Trent's tribe for ICWA purposes.

Wales, OCS, and Chignik Lagoon all disagree with the way the court determined the child's tribe. Wales argues that although the superior court properly decided on Wales, "Wales is the only Tribe for which [Trent] meets the standard for 'Indian child' " and the court therefore should have stopped its analysis at 25 C.F.R.

---

[26] *See* 25 C.F.R. § 23.109(c)(2)(iv).

§ 23.109(a). Wales argues that Trent does not meet the definition of Indian child by virtue of his eligibility for membership in Chignik Lagoon because "to meet [the] definition of Indian child under ICWA, it is not enough that Trent be eligible [for membership in a tribe]. He must also have a biological parent who is [a] member of Chignik Lagoon, which he certainly does not."

OCS likewise agrees with the designation of Wales as Trent's tribe, but it argues that only 25 C.F.R. § 23.109(b) applies. OCS argues, "Because Trent is eligible for membership in more than one tribe but is only enrolled in one, the court should have applied subsection (b) and deferred to Wales as Trent's Tribe."

Finally, Chignik Lagoon argues that while the court properly proceeded to subsection (c), it erred in finding that Wales had "more significant contacts" with Trent than Chignik Lagoon did. Chignik Lagoon argues that in making this determination the court mistakenly "focused on the interaction between Wales and the court, rather than the interaction between the child and the Tribe." Chignik Lagoon argues that "[t]he record in this case is clear that the child had more significant contacts with Chignik Lagoon" given that "the child was living in a Chignik Lagoon tribal home"; his foster father's "mother . . . is a Chignik Lagoon Tribal member . . . and sees the child frequently"; his foster father's cousin is a Chignik Lagoon member and "visits with the child on a weekly basis"; and "[f]amily members from Chignik Lagoon visit [Trent's foster parents] and have contact with the child on a regular basis." Chignik Lagoon compares this contact to that of Wales, which it summarizes as follows: "[T]he mother had one visit with the child in the child's life," "[t]he child had no contact with maternal biological family members with one possible exception on one occasion," and "Wales never contacted the foster family."

We do not reach the question of which tribe has more significant contacts with Trent because we agree with Wales that it is the only tribe through which Trent

-13-                                                                                     **7628**

meets the ICWA definition of "Indian child." Again, "Indian child" is statutorily defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) . . . eligible for membership in an Indian tribe and . . . the biological child of a member of an Indian tribe[.]"[27] Trent is a member of Wales and so meets the definition in (a). As for (b), Trent is eligible for membership in Chignik Lagoon, but he "is the biological child of a member of" Wales, not Chignik Lagoon. Whether Trent meets the definition of "Indian child" under (b) therefore depends on whether the statute requires that the "Indian tribe" in which the child is eligible for membership be the same as the biological parent's tribe. In other words, is (b) satisfied if the child is eligible for membership in one tribe and the biological parent is a member of another?

We conclude that the subsection (b) definition, as reasonably interpreted, contemplates a single tribe. The BIA regulations aid in interpreting the ICWA statutes,[28] and they define "Indian child" similarly: "any unmarried person who is under age 18 and either: (1) [i]s a member or citizen of an Indian Tribe; or (2) [i]s eligible for membership or citizenship in an Indian Tribe and is the biological child of a member/citizen of an Indian Tribe."[29] The agency comments to this regulation indicate both that the regulatory and statutory definitions are meant to be the same and that the child would have to be eligible for membership in the same tribe as the parent in order to meet the second "Indian child" definition:

---

[27] 25 U.S.C. § 1903(4).

[28] *See State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs. v. Cissy A.*, 513 P.3d 999, 1009 (Alaska 2022) (considering BIA regulations as "add[ing] specificity to [ICWA's] expert witness requirement").

[29] 25 C.F.R. § 23.2. The only substantive difference between the statute and the BIA guideline is the addition of the allowance of citizenship to form the basis for tribal affiliation.

The final rule reflects the statutory definition of "Indian child," which is based on the child's political ties to a federally recognized Indian Tribe, either by virtue of the child's own citizenship in *the* Tribe, or through a biological parent's citizenship and the child's eligibility for citizenship. Congress recognized that there may not have been an opportunity for an infant or minor child to be enrolled in a Tribe prior to the child-custody proceeding, but nonetheless found that Congress had the power to act for those children's protection given the political tie to *the* Tribe through parental citizenship and the child's own eligibility.[30]

The BIA explained, "This is consistent with other contexts in which the citizenship of a parent is relevant to the child's political affiliation to *that* sovereign."[31]

Other BIA comments reinforce this explanation:

*Comment:* A commenter noted that the regulations sometimes refer to the Indian child being "a member or eligible for membership" without specifying that if the child is not a member, then the child's parent must be a member and the child must be eligible for membership.

*Response:* The statute specifies that if the child is not a Tribal member, then the child must be a biological child of a member and be eligible for membership, in order for the child to be an "Indian child." 25 U.S.C. 1903(4). The final rule addresses this oversight by clarifying in each instance that the biological parent must be a member in addition to the child being eligible for membership.[32]

---

[30] 81 Fed. Reg. 38,795 (June 14, 2016) (emphases added) (citing H.R. REP. NO. 95-1386, at 17 (1978)).

[31] *Id.* (emphasis added) (citing 8 U.S.C. § 1401 (providing for U.S. citizenship for persons born outside of the United States when one or both parents are citizens and certain other conditions are met)).

[32] *Id.*

Case law from across the country, though not addressing this issue directly, is consistent with an interpretation requiring that the child's eligibility and the biological parent's membership involve the same tribe.[33] We conclude that to meet the definition of "Indian child" under 25 U.S.C. § 1903(4)(b), the child must be eligible for membership in the biological parent's tribe, not a different tribe. Because neither of Trent's biological parents is a member of Chignik Lagoon, Trent does not meet the definition of "Indian child" under subsection (b). His tribe for ICWA purposes is properly determined by his status as a Wales tribal member.

## C.    Chignik Lagoon Does Not Have Standing To Challenge The Transfer Of Post-Termination Proceedings To The Wales Tribal Court.

In addition to challenging the superior court's ruling on Trent's tribal membership, Chignik Lagoon argues that the court erred by allowing Wales to intervene and by ordering the transfer of jurisdiction to the Wales tribal court. We raised sua sponte the issue of Chignik Lagoon's continued standing to pursue these procedural issues on appeal if we were to affirm the superior court's finding that Wales, not Chignik Lagoon, is Trent's tribe for ICWA purposes. The parties submitted supplemental

---

[33]    *See, e.g.*, *Nielson v. Ketchum*, 640 F.3d 1117, 1124 (10th Cir. 2011) ("But the final draft of [ICWA] limited membership for those children who were eligible for membership because they had a parent who is a member." (emphasis omitted)); *In re Austin J.*, 261 Cal. Rptr. 3d 297, 311 (Cal. App. 2020) ("[B]eing an Indian child requires that the child be either a member of a tribe or a biological child of a member."); *In re Jeremiah G.*, 92 Cal. Rptr. 3d 203, 207 (Cal. App. 2009) ("[I]f the child is not a tribe member, and the mother and the biological father are not tribe members, the child simply is not an Indian child."); *In re Adoption of C.D.*, 751 N.W.2d 236, 244 (N.D. 2008) ("[A]ll that is necessary under 25 U.S.C. § 1903(4) is admissible evidence that the Tribe has determined either that the child is a member, or that the child is eligible for membership and a biological parent is a member.").

briefing on the standing issue.[34]

"Standing is a 'rule of judicial self-restraint based on the principle that courts should not resolve abstract questions or issue advisory opinions.' "[35] "[A] basic requirement of standing is adversity of interests."[36] "A party satisfies the adversity requirement when the party has 'a "sufficient personal stake" in the outcome of the controversy and "an interest which is adversely affected by the complained-of conduct." ' "[37] Although in Alaska "standing restrictions are prudential, rather than constitutionally mandated,"[38] appellate courts have an "obligation to be sure that standing exists and to raise, sua sponte if need be, any deficiency."[39]

Chignik Lagoon argues that it has standing to challenge the superior court's transfer of post-termination proceedings to the Wales tribal court because Chignik Lagoon was made a party to the proceedings when it intervened. It argues that even if

---

[34] Chignik Lagoon argues that because the other parties did not appeal the superior court's grant of intervenor status, they waived or abandoned any argument that its intervenor status does not convey standing on appeal. But the absence of objection does not determine whether we are obliged to consider the arguments of a party that lacks standing to raise them. *See State v. Alaska Civ. Liberties Union*, 978 P.2d 597, 614 n.106 (Alaska 1999).

[35] *Keller v. French*, 205 P.3d 299, 302 (Alaska 2009) (quoting *Ruckle v. Anchorage Sch. Dist.*, 85 P.3d 1030, 1034 (Alaska 2004)).

[36] *Dapo v. State, Dep't of Health & Soc. Servs.*, 509 P.3d 376, 381 (Alaska 2022) (alteration in original) (quoting *Bibi v. Elfrink*, 408 P.3d 809, 816 (Alaska 2017)).

[37] *Id.* (quoting *Keller*, 205 P.3d at 304).

[38] *Foster v. State*, 752 P.2d 459, 467 (Alaska 1988) (Moore and Burke, JJ., concurring).

[39] *Alaska Civ. Liberties Union*, 978 P.2d at 614 n.106 (quoting *S. F. Drydock, Inc. v. Dalton*, 131 F.3d 776, 778 (9th Cir. 1997)).

it does not have standing on that basis alone, its interest in keeping Trent with his foster family independently satisfies the requirements for interest-injury standing, a standing doctrine which requires a party to have both " 'an interest adversely affected' and 'a sufficiently personal stake in the controversy to guarantee adversity.' "[40] Alternatively, Chignik Lagoon argues that its attempts to enforce ICWA and the Adoption Assistance and Child Welfare Act[41] implicate *parens patriae* standing[42] and that it has standing based on the superior court's alleged violation of its due process rights.[43]

We are not persuaded. Chignik Lagoon's status as an intervenor is not enough to establish standing for the duration of the case regardless of the disposition of

---

[40] *Triem v. Kake Tribal Corp.*, 513 P.3d 994, 996-97 (Alaska 2022) (quoting *Neese v. Lithia Chrysler Jeep of Anchorage, Inc.*, 210 P.3d 1213, 1219 (Alaska 2009)).

[41] 42 U.S.C. § 673(a)(1)(A)-(B) (requiring states to enter into adoption assistance agreements providing for payments with certain children's adoptive parents); *id.* § 675a(a)(2)(B) (requiring states to implement procedures to ensure that courts at permanency hearings "[m]ake a judicial determination explaining why . . . another planned permanent living arrangement is the best permanency plan for the child and provide compelling reasons why [other arrangements] continue[] to not be in the best interests of the child").

[42] "The doctrine of *parens patriae* allows a [tribe] to bring suit to protect its interests in matters of public concern." *State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs. v. Native Vill. of Curyung*, 151 P.3d 388, 399 (Alaska 2006). To assert *parens patriae* interests, a tribe "must be able to articulate an injury to the well-being of the [tribe] as a whole or to a sufficiently large segment of its population, and the overall injury must be more than the mere sum of its parts." *Id.*

[43] Chignik Lagoon argues that the superior court denied it due process by ordering the proceedings to be transferred to Wales's tribal court "without any further hearing."

the issues in which it claims an interest.[44] The superior court decided, and we affirm, that Chignik Lagoon is not Trent's tribe for ICWA purposes. The policies underlying ICWA — "the protection and preservation of Indian tribes and their resources," including "Indian children" — apply both to tribes of which a child is a member and those for which a child can claim eligibility.[45] But we do not believe that ICWA's policies are intended to protect the interests of a tribe whose relationship to the child depends on membership *eligibility* when neither parent is a member of the tribe and the child is a member of another tribe.

We emphasize that our holding on this question is prudential and limited to the facts of this case. Trent is a member of Wales and not of Chignik Lagoon; his biological parents have no connection to Chignik Lagoon; his foster father did not himself become a member of Chignik Lagoon until after the superior court had granted the transfer of jurisdiction to the Wales tribal court. It would seem anomalous to us if ICWA were interpreted as allowing one tribe to interfere in another tribe's child protective proceedings involving the second tribe's own member child. We conclude that Chignik Lagoon's interests, whatever they may be, are not sufficient to satisfy the adversity requirement.[46]

---

[44]    Analogously, we have questioned whether a parent "has standing to appeal the trial court's finding regarding placement after termination of [the parent's] parental rights." *Shirley M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 342 P.3d 1233, 1244 (Alaska 2015).

[45]    25 U.S.C. § 1901 (2)-(3).

[46]    Chignik Lagoon's arguments that it has standing based on a *parens patriae* interest in enforcing ICWA and the Adoption Assistance and Child Welfare Act and a violation of its due process rights are likewise unconvincing. Because we do not find that Chignik Lagoon has suffered an injury, *parens patriae* standing is inapplicable here.

(continued...)

Because we conclude that Chignik Lagoon does not have standing to challenge Wales's intervention or the transfer of post-termination CINA proceedings to the Wales tribal court, we do not reach the merits of those challenges.

## V.    CONCLUSION

We AFFIRM the superior court's order recognizing Wales as Trent's tribe and REMAND to the superior court for further proceedings consistent with this opinion.

---

[46]    (...continued)
*See supra* note 42.  Likewise, Chignik Lagoon did not suffer a violation of its due process rights; the superior court allowed it to intervene and present evidence and considered its objections to transfer on the merits.